IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MITCHELL JOHNSON and ) | |
| MARY S. JOHNSON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No: 3:15-cv-00047 |
| v. ) | Judge Campbell /Bryant |
| ) | |
| BROKER SOLUTIONS, INC., *et. al.*, ) | |
| ) | |
| Defendants. ) | |

**To: The Honorable Judge Todd J. Campbell, United States District Judge**

## REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Defendants' Motions to Dismiss be **GRANTED** (Docket Entry 21, 23 and 25) and that this action be **DISMISSED** with prejudice for failure to state a claim.

### I. Statement of the Case

Plaintiffs, proceeding *pro se*, filed their Complaint on December 17, 2014 in Davidson County, Tennessee, alleging claims related to the of the mortgage on their home and the alleged securitization[1] of the mortgage. (Docket Entry 7-1). Plaintiffs allege that they signed a mortgage note with the lender, Broker Solutions, for $270,540.00 and executed a deed of trust in favor of Broker Solutions, secured by Plaintiffs' property in Tennessee, on or about December 29, 2010.

---

1 *Rush v. Mac*, No. 14-1476, 2015 WL 4069807, at *4 n.4 (6th Cir. July 6, 2015)(citing *Bisson v. Bank of Am.*, N.A., 919 F.Supp.2d 1130, 1133 (W.D.Wash.2013))("Securitization is the packaging of debt into instruments broadly referred to as 'mortgage-backed securities.' One court has described it this way: One could analogize this process to taking raw ingredients and combining them to make bread then selling the slices individually, or putting different kinds of meat into a sausage grinder then selling the individual sausages. What is born from this process are new debt instruments, sold on the open market, that have pooled-and-sliced home loans as their ingredients. Different debt instruments work in different ways, but the basic concept is that the home loan debt gets repackaged and sold to other investors rather than being held by the bank that originated the loan.").

(Docket Entry 7-1, p. 8).[2] Plaintiffs allege that Bank of America is the "Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust . . . ."(Docket Entry 7-1, p. 3). Plaintiffs seek damages and declaratory relief. (Docket Entry 7-1). Plaintiffs also list eleven causes of action and argue that they are entitled to rescind their loan. (Docket Entry 7-1).

1. Lack of standing to foreclose;
2. Fraud in the concealment;
3. Fraud in the inducement;
4. Intentional Infliction of Emotional Distress;
5. Quiet title;
6. Slander of title;
7. Declaratory relief;
8. Violations of Truth in Lending Act (TILA);
9. Violations of Real Estate Settlement Practices Act (RESPA);
10. Violations of Home Ownership Equity Protection Act (HOEPA); and
11. Rescission.

(Docket Entry 7-1). Plaintiffs do not submit a foreclosure notice or allege that a foreclosure is imminent. Plaintiffs attach a "property securitization analysis report" that is also referred to as a "certified, forensic audit" in the Complaint. (Docket Entry 7-1, pp. 9, 35-63). The report indicates that there is no recorded foreclosure on the property and that the mortgage note "may

---

2 The Magistrate Judge notes that Plaintiffs have failed to file copies of the mortgage note or deed of trust. Defendant Bank of America has filed copies of these documents. (Docket Entry 21-1 and 21-2). Therein, it appears that Plaintiff Mitchell Johnson signed the deed of trust although he did not sign the mortgage note. (Docket Entry 21-1, p. 4 and 21-2, p. 9). Also, although Plaintiffs allege that the "closing date" was December 29, 2010, the mortgage note and deed of trust are dated October 25, 2010. (Docket Entry 21-1 and 21-2). Defendants also submit a copy of an allonge to the promissory note that endorsed the note to Bank of America on October 25, 2010. (Docket Entry 21-1).

have been sold, transferred, assigned and securitized into the GINNIE MAE REMIC TRUST 2010-160 with a [c]losing [d]ate of December 29, 2010." (Docket Entry 7-1, p. 45).

On January 16, 2015, Defendants timely filed a Notice of Removal based on diversity jurisdiction and the federal questions presented. (Docket Entry 1). Plaintiffs are citizens of Tennessee while Defendants are a bank in North Carolina and corporations in California, the District of Columbia, Delaware, and Virginia and the amount in controversy exceeds $75,000.00. (Docket Entry 1, pp. 6-7). Plaintiffs did not file an amended complaint after removal. The District Judge referred this action to the Magistrate Judge on January 20, 2015. (Docket Entry 3).

On February 06, 2015, Defendants filed the three pending Motions to Dismiss with Memoranda of Law. (Docket Entry 21-26). Although the Magistrate Judge granted Plaintiffs' Motion for Extension of Time to File a Response, Plaintiffs failed to do so and the deadline has now passed. (Docket Entry 29 and 30). This failure indicates "that there is no opposition to the motion." Local Rule 7.01(b). The matter is now properly before the Court.

## II.     Standard of Review

Federal Rule of Civil Procedure (FED. R. CIV. P.) 12(b)(6) governs motions to dismiss for failure to state a claim. "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)(quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). Instead, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ." *Bell Atl. Corp.*, 550 U.S. at 556. A complaint will survive a motion to dismiss if it includes:  (1) facts to support a plausible claim; (2) more than a recital of elements of a cause of action; and (3) facts that, taken as true, raise the right to relief above the level of speculation. *Bell Atl. Corp.* at 555-56. However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, the pleading standard in FED. R. CIV. P. 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft,* 556 U.S. at 678-79.

When a plaintiff is *pro se*, the Court will review the plaintiff's pleadings under "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, "even *pro se* complaints must satisfy basic pleading requirements." *Dallas v. Holmes*, 137 F. App'x 746, 750 (6th Cir. 2005)(citation omitted)(unpublished opinion).

When considering a motion to dismiss, the Court "may consider the complaint along with any document not formally incorporated by reference or attached to the complaint as part of the pleadings if the document is referred to in the complaint and is central to the plaintiff's claim." *Gardner v. Quicken Loans, Inc.,* 567 F. App'x 362, 364-65 (6th Cir. 2014)(citation and internal quotation omitted)(unpublished case). Therefore, the Magistrate Judge "may consider documents relating [to] the note, mortgage, assignment, loan modification process, and foreclosure that are referenced in the complaint and integral to [Plaintiffs'] claims." *Gardner,* 567 F. App'x at 365.

### III.    Analysis

The Magistrate Judge notes that there has been a flood of cases in which courts have addressed claims and "certified, forensic audits" or "property securitization analysis reports" that are almost identical to the claims and the report in Plaintiffs' Complaint.[3] Although there is

---

3 *Wilson v. Regions Bank,* No. 3:14-CV-02344, 2015 WL 4276262, at *1 (M.D. Tenn. July 14, 2015)(The undersigned Magistrate Judge addressed and recommended dismissal of the same eleven causes of action with identical language to the causes of action in the instant Complaint); *Renfroe v. Flagstar Bank*, No. 14-2914-STA-DKV, 2015 WL 3407361, at *3 n.6 (W.D. Tenn. Mar. 2, 2015) *report and recommendation adopted,* No. 14-2914-STA-DKV, 2015 WL 3407375 (W.D. Tenn. May 26, 2015)(Noting that Plaintiffs' "allegations are copied verbatim from a generic complaint readily available online" and listing the website: http://www.certifiedforensicloanauditors.com/pdfs/sample-complai nt-package/Complaint-Petition.pdf.); *Demilio v.*

nothing inherently inappropriate about template complaints or cookie cutter reports, these recent cases have called into question the validity of the reports and the intentions of those who sell such reports. One bankruptcy court referred to these reports as "the result of charlatans who prey upon people in economically dire circumstances" and noted that "nonsensical legalese does not make a debt disappear, but there are people who are happy to help the vulnerable part with their money in the belief that it is so." *In re Norwood,* No. 10-84443-PWB, 2010 WL 4642447, at *2(citation omitted).

The Sixth Circuit also noted the uptick in claims related to securitization and addressed "the extent to which the securitization of a mortgage note might affect the borrower's obligations to repay the loan or cloud the property's title." *Thompson v. Bank of Am., N.A.,* 773 F.3d 741, 746 (6th Cir. 2014), *reh'g denied* (Dec. 24, 2014). In doing so, the Court noted that "the district courts in this circuit, particularly in Tennessee, have entertained a spate of civil actions that advance legal theories similar to [the plaintiff's]. Like [the plaintiff's], many of these civil actions are scattershot affairs, tossing myriad (sometimes contradictory) legal theories at the court to see what sticks." *Thompson,* 773 F.3d at 748. The Court set out several principles, as discussed below, in an effort "[t]o assist the district courts in addressing this wave of creative litigation . . . ." *Thompson*, 773 F.3d at 748.

---

*Citizens Home Loans, Inc.,* No. 3:12-CV-81 CAR, 2013 WL 331211, at *3 (M.D. Ga. Jan. 29, 2013) *aff'd*, 543 F. App'x 986 (11th Cir. 2013)(citation omitted)("In fact, the Federal Trade Commission has issued a 'Consumer Alert' regarding such 'Forensic Loan Audits.' The Court will not, in good conscience, consider any facts recited by such a questionable authority."); *Fidel v. Deutsche Bank Nat. Trust Co. ex rel. Long Beach Mortgage Trust 2006-1,* No. C10-2094 RSL, 2011 WL 2436134, at *1 (W.D. Wash. June 14, 2011)(Disregarding a "Securitization Audit and Forensic Audit."); *In re Norwood,* No. 10-84443-PWB, 2010 WL 4642447, at *2 (Bankr. N.D. Ga. Oct. 25, 2010)("The Court . . . is quite confident that there is no such thing as a 'Certified Forensic Loan Audit' or a 'certified forensic auditor.' In any event, the documents make no more sense than anything else in the Debtor's papers and confirm the empty gimmickery of these types of claims. The 'Certified Forensic Loan Audit' contains the remarkably ironic disclaimer that 'Nothing in this audit report constitutes or is meant to constitute advice of any kind. If you require advice in relation to any legal matter you should consult an appropriately qualified lawyer.' Yes, indeed.").

Here, even accepting the Plaintiffs' claims as true and liberally construing Plaintiffs' claims, the Magistrate Judge finds that none of the claims "stick."

Plaintiffs' first claim is that Defendants lack standing to foreclose. Plaintiffs' argue that "the only individual who has standing to foreclose is the holder of the note" and the proper holders of Plaintiffs' mortgage note are "the certificate holders of the securitized trust." (Docket Entry 7-1, p. 15). This argument lacks merit because "securitization creates 'a separate contract, distinct from [a p]laintiff's debt obligations under the reference credit (i.e. the Note).' " *Dauenhauer v. Bank of New York Mellon,* No. 3:12-CV-01026, 2013 WL 2359602, at *5 (M.D. Tenn. May 28, 2013) *aff'd,* 562 F. App'x 473 (6th Cir. 2014)(citation omitted). In other words, "securitization of a note does not alter the contractual relationship between the borrower and the note holder." *Dauenhauer,* No. 3:12-CV-01026, 2013 WL 2359602, at *6. It is well established that in Tennessee, "the lender, the holder of the note, has title to the property [and that]. . . [u]ntil the note is satisfied, the holder of the note has superior title to the property." *Thompson,* 773 F.3d at 750-51. Moreover, the mortgage note is a negotiable instrument which "can be sold or assigned to another party who then receives the right to enforce the instrument." *Thompson,* 773 F.3d at 749 (citing TENN. CODE. ANN. §§ 47–3–104, 201, 203, 301, 302). Therefore, Plaintiffs' debt obligations and the note holder's standing to enforce those obligations remain intact and unaffected by the securitization or assignment of the mortgage. Therefore, Plaintiffs' claim fails as a matter of law.

Plaintiffs also claim that Defendants failed to comply with their own securitization requirements under the "pooling and servicing agreement (PSA)."[4] (Docket Entry 7-1, p. 15).

---

4 *Christmas v. CitiMortgage, Inc.,* No. 3:14-CV-071, 2014 WL 2117453, at *1 n.4 (S.D. Ohio May 21, 2014)( "A pooling and servicing agreement is a trust agreement required to be filed with the United States Securities and Exchange Commission ("SEC") which, along with another document called a mortgage loan purchase agreement, are the operative securitization documents.").

This claim fails because Plaintiffs, as borrowers, were not a party to the PSA or a third party beneficiary and therefore lack standing to bring this claim. *Dauenhauer,* No. 3:12-CV-01026, 2013 WL 2359602, at *5(citation omitted).

Plaintiffs' next claim is that MERS "cannot be a real party in interest in a securitized mortgage." (Docket Entry 7-1, p. 16). However, "[c]ourts nationally, including Tennessee's, have consistently approved MERS' role in loans when designated as the nominee and beneficiary under a deed of trust." *Dauenhauer v. Bank of New York Mellon,* 562 F. App'x 473, 479 (6th Cir. 2014)(unpublished opinion).[5] Here, the Deed of Trusts lists MERS as "nominee for Lender" and as the beneficiary. (Docket Entry 21-2, p. 1). Therefore, the role of MERS was valid and Plaintiffs' claim fails as a matter of law.

Plaintiffs' next claims are that Defendants concealed that the loan was securitized and that Defendants induced them into the loan with misrepresentations. (Docket Entry 7-1, pp. 18-20). However, these claims for fraud in the concealment and fraud in the inducement both fail. First, FED. R. CIV. P. 9(b) provides that a plaintiff must allege " 'the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud . . . .' " *U.S. ex rel. Poteet v. Medtronic, Inc.,* 552 F.3d 503, 518 (6th Cir. 2009). Plaintiffs plead that they have incurred attorney's fees, although they have always been *pro se*. (Docket Entry 7-1, pp. 19-20). Plaintiffs plead that Defendants "[c]hanged the character of the loan" through securitization and that this was not disclosed to Plaintiffs. (Docket Entry 7-1, p. 18). Plaintiffs plead that Defendants' "material misrepresentation was made with the purpose of initiating the

---

5 *Dauenhauer,* 562 F. App'x at 478-79(citation omitted)("MERS is a company that provides mortgage recording services to lenders and 'allows the lenders to trade the mortgage note and servicing rights on the market' with MERS maintaining electronic recordings of each transaction . . . . When the mortgage loan is repaid, MERS, as agent grantor, conveys the property to the borrower.").

securitization process . . . in order to profit from the sale of the Property by selling the note to sponsors who then pool the note and sell it to investors . . . ." (Docket Entry 7-1, p. 19). Given these claims, the Magistrate Judge cannot conclude that Plaintiffs have hit the mark on pleading an injury or pleading the time, place, or content of the alleged misrepresentations. Moreover, the Sixth Circuit has stated that "[t]he pooling of mortgages into investment trusts is not some sort of illicit scheme that taints the underlying debt." *Thompson*, 773 F.3d at 749. Therefore, these claims fail as a matter of law.

Plaintiffs' claim for intentional infliction of emotional distress (IIED) also fails. In Tennessee, a plaintiff must establish the following to state a claim for IIED: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff." *Lourcey v. Estate of Scarlett,* 146 S.W.3d 48, 51 (Tenn. 2004)(citation omitted). A bankruptcy court in the Eastern District recently noted that "the running of foreclosure notices . . . may . . . cause[] embarrassment . . . ." *In re Jenkins,* 488 B.R. 601, 617 (Bankr. E.D. Tenn. 2013)(citation omitted). However, the court went on to state that such conduct would not be "outrageous behavior, so extreme in degree, as to go beyond all bounds of decency . . . ." *In re Jenkins,* 488 B.R. at 617)(citation and internal quotation omitted). Here, Plaintiffs allege that they "did not default in the manner stated in the Notice of Default" and that they have "been living under the constant emotional nightmare of losing the Property." (Docket Entry 7-1, p. 21). However, the Magistrate Judge is not persuaded that the issuance of a Notice of Default constitutes outrageous behavior. Therefore, this claim fails as a matter of law.

Plaintiffs' next cause of action is slander of title. In Tennessee, a claim for slander of title requires the plaintiff to show: " '(1) that it has an interest in the property, (2) that the defendant

published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statement proximately caused the plaintiff a pecuniary loss.' " *Currie v. JPMorgan Chase Bank, N.A.,* No. 2:12-CV-02915-JPM, 2013 WL 3776217, at *8 (W.D. Tenn. July 16, 2013)(quoting *Brooks v. Lambert,* 15 S.W.3d 482, 484 (Tenn.Ct.App.1999)). Plaintiffs' pleadings are long on legal conclusions and short on facts. Plaintiffs plead that Defendants intentionally and maliciously published a Notice of Default, Notice of Trustee's Sale, Trustee's Deed and documents related to foreclosure of Plaintiffs' property. (Docket Entry 7-1, pp. 21-22). However, Plaintiffs submit none of these documents. (Docket Entry 7-1). Moreover, Plaintiffs offer no details such as dates, descriptions, quotes, or excerpts from these documents by which the Magistrate Judge can conclude that Defendants published the documents or that they contained false statements. Therefore, Plaintiffs' claim fails as a matter of law.

Plaintiffs' next two causes of action are to quiet title and for declaratory relief. (Docket Entry 7-1, pp. 22-24). Plaintiffs claim that Defendants "have no right, estate, lien or interest in or to the property . . . ." (Docket Entry 7-1, p. 23). Plaintiffs also seek declaratory relief for a determination of "the rights, obligations and interest of the parties with regard to the Property" and a determination of whether "any Defendant has authority to foreclose on the property." (Docket Entry 7-1, p. 24). These claims fail for the same reasons stated above under Plaintiffs' first claim about Defendants' lack of standing to foreclose.

Plaintiffs' claims for violations of RESPA, TILA, and HOEPA are time-barred. Plaintiffs claim that Defendants violated RESPA because Plaintiffs' mortgage payments were "misleading and designed to create a windfall." (Docket Entry 7-1, p. 26). Plaintiffs claim that Defendants violated TILA and HOEPA because Defendants failed to provide "required disclosures and

notices." (Docket Entry 7-1, p. 25). Therefore, the alleged violations occurred during the execution of the mortgage documents in October 2010 according to the documents as filed by Defendants or December 2010 according to Plaintiffs Complaint. (Docket Entry 7-1, p. 8). The statute of limitations for RESPA claims is at most three years from the date of the alleged violation.[6] The statute of limitations for TILA and HOEPA claims is also, at most, three years from "the date of the occurrence of the violation."[7] *Girgis v. Countrywide Home Loans, Inc.,* 733 F. Supp. 2d 835, 845 (N.D. Ohio 2010)("Since HOEPA is an amendment to TILA, and the former is incorporated into the latter, the same statute of limitations prescribed under 15 U.S.C. § 1640(e) applies."). Therefore, Plaintiffs' claims would have expired, at the latest, in December 2013. Plaintiffs filed their Complaint on December 17, 2014, one year too late. (Docket Entry 7-1, p. 2). Plaintiffs' vague tolling arguments are unpersuasive. Therefore, the claims for violations of RESPA, TILA, and HOEPA fail as a matter of law.

Likewise, Plaintiffs' claim for rescission fails.

---

6 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions brought by the Bureau, the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.").

7 15 U.S.C. § 1640(e) ("Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or, in the case of a violation involving a private education loan (as that term is defined in section 1650(a) of this title), 1 year from the date on which the first regular payment of principal is due under the loan. Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. An action to enforce a violation of section 1639, 1639b, 1639c, 1639d, 1639e, 1639f, 1639g, or 1639h of this title may also be brought by the appropriate State attorney general in any appropriate United States district court, or any other court of competent jurisdiction, not later than 3 years after the date on which the violation occurs. The State attorney general shall provide prior written notice of any such civil action to the Federal agency responsible for enforcement under section 1607 of this title and shall provide the agency with a copy of the complaint. If prior notice is not feasible, the State attorney general shall provide notice to such agency immediately upon instituting the action . . . .").

> Under the Truth in Lending Act, 82 Stat. 146, 15 U.S.C. § 1601 *et seq.,* when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately. See 15 U.S.C. § 1635. Under § 1635(f) of the statute, this right of rescission "shall expire" in the usual case three years after the loan closes or upon the sale of the secured property, whichever date is earlier.

*Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 411 (1998). Therefore, "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period." *Beach,* 523 U.S. at 412. Therefore, Plaintiffs' right to recession also expired in 2013. Moreover, since Plaintiffs have failed to state a claim for the reasons explained above, Plaintiffs do not have grounds on which to establish a claim for rescission of their mortgage.

## IV.     Recommendation

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Defendants' Motions to Dismiss be **GRANTED** (Docket Entry 21, 23 and 25) and that this action be **DISMISSED** with prejudice for failure to state a claim.

Under FED. R. CIV. P. 72(b), the parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 22 day of July, 2015

s/John S. Bryant\
John S. Bryant\
U.S. Magistrate Judge
